**NOVAMEDIX, LIMITED,**
Plaintiff–Appellant,

v.

**NDM ACQUISITION CORPORATION**
and Vesta Healthcare, Inc.,
Defendants–Appellees.

No. 97–1507.

United States Court of Appeals,
Federal Circuit.

Jan. 28, 1999.

**1178**

Stephen J. Marzen, Sherman & Sterling, of Washington, DC, argued for plaintiff-appellant. With him on the brief was Reginald R. Goeke.

Shannon M. O'Toole, Oppenheimer Wolff & Donnelly, of Minneapolis, Minnesota, argued for defendants-appellees. With her on the brief was Anne F. Larson.

Before RICH, Circuit Judge, SMITH, Senior Circuit Judge and NEWMAN, Circuit Judge.

EDWARD S. SMITH, Senior Circuit Judge.

Novamedix Limited ("Novamedix") appeals the March 20, 1997 order of the District Court for the Southern District of Ohio, overruling a motion by Novamedix to enforce a consent judgment entered in a patent infringement suit brought by Novamedix against NDM. We hold that the settlement agreement incorporated into the consent decree is not a contract for the sale of goods and therefore the implied warranties of fitness and merchantability of UCC §§ 2–314 and 2–315 do not apply. Accordingly, we affirm the decision of the District Court.

*Background*

NDM Acquisition Corp. (predecessor by merger to New Dimensions in Medicine, Inc.; together, "NDM") and Novamedix are competitors in the market for medical footpumps. Footpumps improve the return of blood from the feet to the heart in bed-ridden patients by regularly inflating and deflating specially designed slippers on the patients' feet. The improvement in circulation reduces blood clots and swelling and aids in healing of ulcers in such patients. The footpumps and slippers are regulated as medical devices by the Food and Drug Administration (FDA).

Novamedix sued NDM and Vesta Healthcare [1] in June of 1994, alleging infringement of Novamedix's four U.S. Patents.[2] The par-

---

1. Vesta Healthcare was dismissed as a defendant in the district court's March 11, 1996 order and is not involved in this appeal.

2. Novamedix's U.S. Patents at issue were Re 32,939; Re 32,940; 4,696,289; and 4,721,101

ties agreed to settle the patent infringement suit on the terms of a settlement agreement, which they entered into on March 5, 1996. Under the settlement agreement, NDM agreed to: (1) admit that it infringed Novamedix's patents and admit the validity and enforceability of those patents; (2) cease infringing the patents; (3) deliver its inventory of footpumps and slippers, along with its customer list, to Novamedix; (4) grant Novamedix an exclusive license under NDM's own patents; and (5) pay Novamedix $47,500.

For its part, Novamedix agreed to release NDM from further liability on its patent infringement claim, and agreed not to depose certain NDM employees in connection with ongoing, unrelated patent litigation. In addition, Novamedix was required to send a notice to all of NDM's customers, informing them of the transfer of NDM's inventory and stating that "Novamedix or its designee would like to service the needs of Customers on mutually accepted terms." The settlement agreement also contained a New York choice-of-law provision.

The District Court for the Southern District of Ohio entered a consent judgment on March 11, 1996. In the consent judgment, NDM admitted the validity and enforceability of Novamedix's patents, and admitted infringing the patents. The consent judgment also enjoined NDM from further infringement and incorporated the settlement agreement, requiring both parties to "adhere to the terms of the Agreement between them dated March 5, 1996." The district court retained jurisdiction for enforcement of the decree.

NDM then delivered its inventory and customer list to Novamedix. The parties dispute whether they understood that Novamedix intended to sell NDM's inventory to NDM's former customers. Whatever the parties' understanding, the slippers in NDM's existing inventory, and delivered to Novamedix, proved to be unsaleable because they did not meet FDA requirements.[3] On May 13, 1996, Novamedix filed a Motion to Enforce Final Judgment on Consent, arguing that under New York law the settlement agreement was a contract for the sale of goods and therefore subject to the implied warranties of merchantability and fitness of New York's version of the Uniform Commercial Code (UCC) §§ 2–314 and 2–315.

On March 20, 1997, the district court overruled Novamedix's motion. The district court framed the issue posed by Novamedix's motion as whether the "Consent Judgment should be treated as a contract for the sale of goods for the purpose of implying the specified UCC warranties." The district court, relying on *United States v. Armour*, 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971), held that it should not. The district court found the language of the settlement agreement to be unambiguous, barring the use of extrinsic evidence in its interpretation. The court concluded that it was bound to hold the settlement agreement to its express terms, because *Armour* prohibited construing a consent decree so as to further the subjective purposes of one of the parties to the agreement. Since no express warranties were given by NDM in regard to the quality of its inventory, the district court refused to imply warranties by construing the settlement agreement as a contract to sell goods.

We agree with the district court's framing of the issue and, although our reasoning differs somewhat, we agree with the court's ultimate conclusion.[4] We therefore affirm.

*Jurisdiction and Standard of Review*

■ The original claim for relief arose under the patent laws, 28 U.S.C. § 1338(a), and the consent judgment disposing of the case contained a provision retaining jurisdiction for purposes of enforcement. Thus, the or-

---

3. The slippers had been approved for sale by FDA based on a product lifetime of 60,000 inflation/deflation cycles. All of the slippers in NDM's inventory at the time of the consent judgment, however, were defective and failed at far fewer than 60,000 cycles. They therefore could not be sold under the existing FDA clearance.

4. We recognize that the transfer of inventory in partial settlement of a legal claim, under circumstances where only one party knows the condition of that inventory, raises issues other than the implied warranties of the UCC. However, the argument below and on appeal was limited to the implied warranty issue. We therefore limit our discussion to that issue, as well.

ders appealed from arise under the patent laws and we have jurisdiction over the appeal. *See Gjerlov v. Schuyler Labs., Inc.,* 131 F.3d 1016, 1019 (Fed.Cir.1997).

In this case, the consent decree under consideration incorporates the terms of the parties' settlement agreement, and it is the terms of the incorporated settlement agreement that are at the heart of the parties' disagreement. Generally, interpretation of a settlement agreement is not an issue unique to patent law, even if arising in the context of a patent infringement suit. *See Gjerlov,* 131 F.3d at 1020. *See also Sun Studs, Inc. v. Applied Theory Assocs., Inc.,* 772 F.2d 1557, 1561 (Fed.Cir.1985). In issues that are not unique to patent law, we apply the law of the appropriate regional circuit. Accordingly, we apply the law of the Sixth Circuit in this case.

The Sixth Circuit has held that both consent decrees and settlement agreements are construed in the same manner as other contracts. *See Brown v. Neeb,* 644 F.2d 551, 557 (6th Cir.1981) (" '[S]ince consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts.' ") (quoting *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236–237, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975)); *Bamerilease Capital Corp. v. Nearburg,* 958 F.2d 150, 152 (6th Cir.1992) ("Settlement agreements are a type of contract and are therefore governed by contract law.... *Wong v. Bailey,* 752 F.2d 619, 621 (11th Cir.1985) ('The construction and enforcement of settlement agreements are governed by principles of the state's general contracts law.')").

Construction of a contract is a matter of law that is subject to plenary review on appeal. *Federal Deposit Ins. Corp. v. Aetna Cas. & Sur. Co.,* 903 F.2d 1073, 1077 (6th Cir.1990) ("When the district court construes a contract, such interpretation is a question of law and reviewable de novo by the appellate court."). Here, the parties' settlement agreement specifies that any disputes arising out of the agreement would be governed by New York law. We therefore review independently and completely the settlement agreement, applying the laws of the state of New York.

*Interpretation of the Settlement Agreement*

As the district court observed, the Supreme Court has cautioned against construing a consent judgment beyond its express terms simply because the decree as written does not serve the asserted purpose of one of the parties to the settlement.

Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.... [T]he instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.

*United States v. Armour & Co.,* 402 U.S. 673, 681–682, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971) (footnote omitted).

The district court found itself bound by *Armour* not to construe the settlement agreement as a contract for the sale of goods. To do so, the court reasoned, would directly contravene Supreme Court precedent because it would amount to construing the agreement by reference to Novamedix's purpose in entering into it. We agree that the interpretation of the agreement must be based, not on the subjective intentions of the parties, but on the objective words of their agreement. The district court's reasoning,

however, short-circuits the necessary analysis. The wording of the district court's order suggests that it refused to construe the agreement as a contract for the sale of goods *solely* because to do so would satisfy Novamedix's subjective purposes.

Such a basis for the court's decision would be legal error. *Armour* does not hold that any interpretation of a consent decree that is in accord with one or the other party's purposes must be discarded for that reason alone. Obviously, where two parties disagree on the meaning of a contract term, an interpretation that fails to meet one party's purpose will very likely meet the other party's purpose. In the present case, interpretation of the settlement agreement as not being a contract for the sale of goods meets the purpose of NDM in not having to warrant the quality of the slippers.

Clearly, the Court in *Armour* meant to caution against interpretation of consent decrees *beyond their express terms* on the basis of a party's purpose in entering into the settlement. This does not mean, though, that a settlement agreement cannot incorporate terms not expressly recited; only that the purpose of a party to the agreement is not dispositive of its meaning. The district court in this case seems to suggest that, because there are no express warranties in the settlement agreement, there can be no warranties under *Armour*. This reading of *Armour* would unfairly restrict the scope of the consent decree.

 The consent decree in this case is based upon a settlement agreement negotiated and agreed to by the parties. "Settlement agreements are a type of contract and are therefore governed by contract law." *Nearburg*, 958 F.2d at 152. "We have long held that the fundamental objective when interpreting a written contract is to determine the intention of the parties as derived from the language employed in the contract (*see, Morlee Sales Corp. v. Manufacturers Trust Co.*, 9 N.Y.2d 16, 19, 210 N.Y.S.2d 516, 172 N.E.2d 280). Similarly, where the parties have agreed to conduct themselves in accordance with the rights and duties expressed in a contract, a court should strive to give a fair and reasonable meaning to the language used (*Aron v. Gillman*, 309 N.Y. 157, 163, 128 N.E.2d 284; *Sutton v. East River Sav. Bank*, 55 N.Y.2d 550, 555, 450 N.Y.S.2d 460, 435 N.E.2d 1075)." *Abiele Contracting, Inc. v. New York City School Const. Auth.*, 91 N.Y.2d 1, 666 N.Y.S.2d 970, 689 N.E.2d 864, 867–868 (N.Y.1997).

 "New York follows the common law rule that, '[i]n interpreting a contract, the intent of the parties governs,' and therefore '[a] contract should be construed so as to give full meaning and effect to all of its provisions.' *American Express Bank Ltd. v. Uniroyal, Inc.*, 164 A.D.2d 275, 277, 562 N.Y.S.2d 613, 614 (1st Dep't 1990), *appeal denied*, 77 N.Y.2d 807, 569 N.Y.S.2d 611, 572 N.E.2d 52 (1991); *see also Tigue v. Commercial Life Ins. Co.*, 219 A.D.2d 820, 631 N.Y.S.2d 974, 975 (4th Dep't 1995) ('[T]he court must ascertain the intent of the parties from the plain meaning of the language employed.'). In interpreting a contract, '[w]ords and phrases are given their plain meaning. Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement.' *American Express*, 164 A.D.2d at 277, 562 N.Y.S.2d at 614 (citations omitted); *see also Heller v. Pope*, 250 N.Y. 132, 135, 164 N.E. 881 (1928). Furthermore, where 'the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law', and a claim turning on that interpretation may thus be determined by summary judgment or by dismissal. *American Express*, 164 A.D.2d at 277, 562 N.Y.S.2d at 614; *see also Tigue*, 631 N.Y.S.2d at 974." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir.1996).

Thus, under New York law, if the language of the agreement reflects an intention of the parties to create a contract for the sale of goods, their intention should be given effect. If the parties intended the settlement agreement to be a contract for the sale of goods, then by law they intended to include warranties of fitness and merchantability, since the New York UCC implies those warranties in every merchant's contract for the sale of goods unless they are conspicuously disclaimed. N.Y.U.C.C. §§ 2–314, 2–315, 2–316(2). The settlement agreement contains no disclaimers of warranty. The issue pre-

sented, then, is whether the objective language of the settlement agreement shows the parties' intent to create a contract for the sale of goods, according to New York law.

Appellant argues that under New York law, a "contract for sale of goods" requires only that there be a sale (i.e., the "passing of title from the seller to the buyer for a price," N.Y.U.C.C. § 2–106(1)) and that the subject of the sale be goods rather than services. Here, the argument goes, the settlement agreement was a contract for the sale of the defective slippers, because NDM passed title to the slippers (the goods) to Novamedix in exchange for a release of its patent infringement claim (the price).

■ We disagree. The world of commercial transactions is not limited to the binary world presented by Appellant, a world in which an agreement that passes title to Article 2 goods must be either a contract for sale of goods or a contract for sale of services. Many commercial transactions are not governed by Article 2 of the UCC: sale of land or securities, assignment of a contract right, or granting a license under a patent or copyright, to name just a few. The mere fact that title to Article 2 goods changes hands during one of these transactions does not by that fact alone make the transaction a sale of goods. *See, e.g., Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, 432 (2d Cir.1995) (agreement to grant license to use copyrighted material and provide printed training materials not a contract for sale of goods); *ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1266 (1st Cir.1991) (settlement agreement not a contract for sale of goods); *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 17 (1st Cir.1996) (same).

Here, the mere fact that the parties' settlement agreement includes the transfer of personal property in its provisions does not make it a simple sale of goods (slippers) for a price (release of a legal claim). The settlement agreement between NDM and Novamedix is an agreement to release a legal claim in exchange for (1) binding admissions, (2)

money damages of $47,500, (3) patent license rights, and (4) transfer of NDM's existing inventory to Novamedix. To elevate the inventory term over the other elements of consideration given by NDM is to distort the entire agreement through the lens of Novamedix's asserted purpose of selling the inventory when it entered into the agreement. The settlement agreement is no more a contract for the sale of slippers than it is licensing agreement for NDM's patents. In fact, it is neither exclusively; it is a mixed contract, similar to a mixed contract for the provision of both goods and services. It should therefore be analyzed as a mixed contract.

■ To determine whether the UCC's implied warranties apply in a mixed goods/service contract, New York courts apply the "predominant purpose" test: if the predominant purpose of the contract was to sell goods, the contracts falls within the UCC. However, "[i]f service predominates and the transfer of title to personal property is an incidental feature of the transaction, the contract does not fall within the ambit of the Code." *Schenectady Steel Co., Inc. v. Bruno Trimpoli Gen. Const. Co., Inc.*, 43 A.D.2d 234, 350 N.Y.S.2d 920, 922 (N.Y.App.Div. 1974) (finding contract to "furnish and erect the structural steel" for a bridge not to be a contract for the sale of goods. "Respondent was not contracting simply for the steel beams but in essence for their erection and installation with the transfer of the title to the steel a mere incident of the overall transaction." *Id.*). *See also Perlmutter v. Beth David Hosp.*, 308 N.Y. 100, 123 N.E.2d 792 (N.Y.1954).

■ "The New York courts appear to have rejected an approach of applying sales law to the sales aspect of a transaction which combines both sales and service features, requiring instead that the applicable law be determined by looking to the essential nature of the underlying contract." *Consolidated Edison Co. of New York v. Westinghouse Elec. Corp.*, 567 F.Supp. 358, 362 (S.D.N.Y. 1983) (applying New York law).[5]

---

5. "[T]he issues of warranty and breach thereof are generally questions of fact for the jury to resolve." *Emerald Painting, Inc. v. PPG Indus.,*

*Inc.*, 99 A.D.2d 891, 472 N.Y.S.2d 485, 487 (N.Y.App.Div.1984). "However, where the agreement is unambiguous, and there are no

Although the present settlement agreement is not a mixed goods/services contract, the same analysis is applicable to determine whether it should be treated as a contract for the sale of goods. Thus, the UCC's implied warranties of merchantability and fitness apply to the settlement agreement only if its predominant purpose was for the sale of slippers. We hold that it was not. The essential nature of the settlement agreement was to settle a patent infringement lawsuit. The agreement arose out of a patent infringement suit. The agreement contained multiple provisions relating to the patent rights held by Novamedix and NDM: the settlement agreement provided that NDM would admit infringement of Novamedix's patents, admit the validity and enforceability of the patents, cease infringing the patents, and grant Novamedix an exclusive license under NDM's own patents. By contrast, only two provisions of the settlement agreement concern NDM's inventory: the agreement provides that NDM will deliver its inventory to Novamedix and that Novamedix will notify NDM's customers that it has obtained the inventory.

Perhaps the inventory-related provisions were essential *elements* of the overall agreement, at least to Novamedix; perhaps they even support Novamedix's professed intent to sell the slippers to NDM's former customers. But those factors are simply not relevant to the question of whether the "essential nature" of the agreement was an exchange of slippers for release of a legal claim. It was not, and cannot be construed as such with the benefit of hindsight. Therefore, the agreement was not a contract for the sale of goods, and the implied warranties of the UCC do not apply to it.

Novamedix chose to bargain for transfer of the inventory to itself, perhaps with the intention of selling it, without asking NDM to expressly warrant the fitness of the inventory for sale. The parties knew how to put express warranties into the settlement agreement where they were desired. In paragraph 5, NDM "represents and warrants that it has the power to grant the license" attached to the agreement; in paragraph 8, NDM "represents and warrants the accuracy of the numbers of footpump controllers, slippers, and other consumable parts recited in the first two 'whereas' clauses" of the agreement. Had Novamedix desired a warranty as to the quality of the slippers, it could have bargained for inclusion of one in the agreement; having chosen to forego an express warranty during the contract negotiations, it must now live with the consequences.

Appellant argues that the agreement must be construed as a contract for the sale of goods, because the provisions of the settlement agreement requiring NDM to insure the slippers during transit and to notify former NDM customers that the inventory had been transferred to Novamedix are "consistent only with the construction of the Agreement as one for the sale of goods." Appellant also argues that the extrinsic evidence is consistent only with a sale.

It is true that under New York law, " '[a] contract should be construed so as to give full meaning and effect to all of its provisions.' " *Bybyk*, 81 F.3d at 1199 (quoting *American Express Bank Ltd. v. Uniroyal, Inc.*, 164 A.D.2d 275, 562 N.Y.S.2d 613, 614 (N.Y.App.Div.1990)). However, the provisions of the instant agreement are not consistent only with a sale of the slippers. As indicated above, the provisions pointed to by Novamedix—the requirement that NDM deliver the slippers to Novamedix and insure them during transit, and the provision requiring Novamedix to notify NDM's customers of the transfer and its desire to service their needs—arguably are relevant to Novamedix's intention to sell the slippers after obtaining them from NDM, but do not convert the settlement agreement into a sale of goods. The extrinsic evidence cited by Ap-

facts in dispute, it is not error for the court to rule, as a matter of law, whether a contract is for goods or services." *Akrosil Div. of Int'l Paper Co. v. Ritrama Duramark, Inc.*, 847 F.Supp. 623, 627 (citing *United States v. City of Twin Falls*, 806 F.2d 862, 870 (9th Cir.1986)). Here, the judgment below rested solely on documentary evidence, the provisions of the settlement agreement are not ambiguous, and there is no dispute over the terms of the agreement. It is therefore appropriate for us to determine, as a matter of law, whether the agreement is a contract for the sale of goods.

pellant is unhelpful for the same reason: their intention, if any, to sell the slippers is simply irrelevant to the issue of whether the settlement agreement is a contract for the sale of goods. The predominant purpose of the agreement was to settle a lawsuit, regardless of what Novamedix planned to do with the slippers it obtained as part of the settlement.

Our construction of the agreement is consistent with established rules of contract interpretation. The agreement's provisions dealing with patent rights—admissions of infringement, validity and enforceability; agreement to stop infringing; the grant of a license by NDM—are inconsistent with construction of the agreement as a contract for sale of slippers. Such a construction would render all of these provisions mere surplusage at best, in conflict with established rules of contract interpretation.

We conclude that the settlement agreement entered into by the parties on March 5, 1996 was not a contract for sale of goods and therefore does not carry the implied warranties of merchantability and fitness of UCC §§ 2–314 and 2–315. Therefore, the provision of the agreement which required NDM to deliver its inventory did not impliedly require delivery of saleable inventory, but only such inventory as NDM had in its possession. Novamedix does not dispute that NDM delivered its inventory. The district court therefore correctly overruled the Motion to Enforce the Consent Judgment. The judgment of the district court is

AFFIRMED.