A02A0778, A02A0779. HEART OF TEXAS DODGE, INC. v. STAR COACH, LLC; and vice versa.
(567 SE2d 61)

JOHNSON, Presiding Judge.

Star Coach, LLC is in the business of converting sport utility vehicles and pickup trucks into custom vehicles. Star Coach performs the labor involved in installing parts supplied by other companies onto vehicles owned by dealers. Heart of Texas Dodge, Inc. purchased a new Dodge Durango from Chrysler Motors and entered into an agreement with Star Coach wherein Star Coach would convert the Durango to a Shelby SP 360 custom performance vehicle and then return the converted vehicle to Heart of Texas Dodge. The manufacturer delivered the dealer's Durango to Star Coach, and over a period of several months, Star Coach converted the vehicle using parts supplied by another company, Performance West. Several months later, Star Coach delivered the vehicle to Heart of Texas Dodge, and Heart of Texas Dodge paid Star Coach the contract price of $15,768, without inspecting the vehicle. Two days later, Heart of Texas Dodge inspected the vehicle and concluded that the workmanship was faulty. Heart of Texas Dodge stopped payment on the check, and Star Coach filed the underlying suit. A jury returned a verdict in favor of Star Coach for the full amount of the contract. The trial court entered judgment on the jury's verdict, but denied Star Coach's motion for attorney fees. In Case No. A02A0778, Heart of Texas Dodge appeals. Star Coach appeals in Case No. A02A0779.

## Case No. A02A0778

1. In its sole enumeration of error, Heart of Texas Dodge contends that the trial court erred in charging the jury on two provisions of the Uniform Commercial Code,[1] because the UCC does not apply to the contract in this case. Specifically, Heart of Texas Dodge points out that Article 2 of the UCC applies only to contracts for the sale of goods and urges that the contract here was for the provision of services. This distinction matters because, as discussed below, the requirements placed upon the parties by the UCC differ substantially from those imposed by general principles of contract law.[2]

Article 2 of the UCC is expressly limited to transactions involving the sale of goods.[3] If a contract involves only the sale of goods, the UCC applies.[4] If a contract involves the rendition of services, the UCC does not apply.[5] Difficulty arises in determining whether the UCC applies where, as here, a contract involves both goods and services.[6] When the predominant element of a contract is the sale of goods, the contract is viewed as a sales contract and the UCC applies, even though a substantial amount of service is to be rendered in installing the goods.[7] When, on the other hand, the predominant element of a contract is the furnishing of services, the contract is viewed as a service contract and the UCC does not apply.[8] A contract for services and labor with an incidental furnishing of equipment and materials is not a transaction involving the sale of goods and is not controlled by the UCC.[9]

Although we found no cases specifically involving an agreement to modify a new vehicle, we agree with Heart of Texas Dodge that the facts in this case are closely analogous to repair cases. In analyzing those cases, courts look to the fundamental nature of the transaction.

---

[1] At issue are the following instructions:
I further charge you that a rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller. I further charge you where a buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowances, the seller may if he seasonably notifies the buyer, have a further reasonable time to substitute a conforming tender.

[2] See generally *Al & Zack Brown, Inc. v. Bullock*, 238 Ga. App. 246, 249 (1) (518 SE2d 458) (1999).

[3] OCGA § 11-2-102.

[4] *J. Lee Gregory, Inc. v. Scandinavian House*, 209 Ga. App. 285, 287 (1) (433 SE2d 687) (1993).

[5] Id.

[6] Id.

[7] Id.

[8] Id. at 287-288; *Crews v. Roger Wahl, C.P.A., P.C.*, 238 Ga. App. 892, 900 (4) (a) (520 SE2d 727) (1999).

[9] *J. Lee Gregory*, supra at 288 (1).

The primary purpose of a repair transaction is not to sell or purchase parts, but to change or improve the item and return it to the owner. In such cases, the provision of goods is incidental, and the UCC does not apply.[10]

The predominant element of the contract in this case was the furnishing of a service, namely, the conversion of Heart of Texas Dodge's vehicle and the return of it in a modified condition. Star Coach is in the business of performing labor, not selling parts. In fact, the dealer ordered the conversion package from a third party, Performance West, which shipped the necessary parts to Star Coach. The labor takes generally from 12 to 16 weeks. The parts which Star Coach needed to perform the conversion were incidental to the contract.

We point out that the letter Heart of Texas Dodge's attorney wrote to Star Coach explaining the dealer's refusal to pay for the conversion lists *workmanship* as the problem. Specifically, Heart of Texas Dodge complained that the front end had been improperly lowered, a loud noise emanated from the front end, the car was unstable to drive, the exhaust system had been improperly routed and burned the brake cable and shock absorber boot, the hood had a noticeable imperfection at the hood hinge, and the paint job was of extremely poor quality. With the possible exception of the "imperfection at the hood hinge," Heart of Texas Dodge had no complaint regarding the component parts. And in its answer to Star Coach's complaint, Heart of Texas Dodge defended on the basis that Star Coach "wholly and completely failed to perform workmanlike modification" to the vehicle as agreed. Furthermore, in the pre-trial order, Star Coach stipulated that the contract was for "conversion *work*." (Emphasis supplied.) This was primarily a service contract, so the UCC does not apply.[11]

We do not agree with Star Coach's contention that since the con-

---

[10] See *Alco Standard Corp. v. Westinghouse Elec. Corp.*, 206 Ga. App. 794, 795 (2) (426 SE2d 648) (1992) (autotransformers were not sold, but repaired, and any furnishing of materials necessary for the repairs was incidental to services); *American Warehouse &c. v. Floyd's Diesel Svcs.*, 164 Ga. App. 106, 107-108 (296 SE2d 64) (1982) (rebuilding a truck engine is a service, even though new component parts were used); *Gee v. Chattahoochee Tractor Sales*, 172 Ga. App. 351, 353 (2) (323 SE2d 176) (1984) (rebuilding an engine in a tractor, even though new parts are included, is not a sale since the primary purpose of the contract is to repair the vehicle, not sell the parts); *Barry v. Stevens Equip. Co.*, 176 Ga. App. 27, 29 (1) (335 SE2d 129) (1985) (rebuilding a shearing machine, including replacing pins, is not a sale within meaning of UCC).

[11] See *McCombs v. Southern Regional Med. Center*, 233 Ga. App. 676, 677 (1) (b) (504 SE2d 747) (1998) (hospital's installation of a cervical plate during spinal surgery involved services with incidental furnishing of materials and was not "sale of goods" within UCC); *OMAC, Inc. v. Southwestern Machine &c. Works*, 189 Ga. App. 42 (374 SE2d 829) (1988) (UCC did not apply where, in essence, appellee agreed to perform a service, namely, making appellant's raw materials into the parts appellant needed).

tract did not segregate the total price of the parts from the total price of the services to be rendered, the contract should be treated as one for the sale of goods. Whether the price of goods is segregated from the price of services is but one factor to be considered.[12] Considering the totality of circumstances presented in this case, however, it can hardly be said that the rendition of services was merely incidental to the contract.[13]

Star Coach's claim that only $2,600 was for labor costs, and that therefore the balance of the contract price is attributable to the cost of parts, the implication being that the contract was predominantly one for the sale of goods, is not supported by the record. Star Coach's citation to the record on this point is not accurate. As best we can tell from the record, the testimony upon which Star Coach apparently relies is not clear as to how the labor and material costs are allocated. Star Coach's owner testified that of the $15,768 contract price, Star Coach would keep around $2,600 after paying expenses. However, she also testified that Star Coach subcontracted out to other companies a significant amount of the labor involved in the conversion.

Because the predominant character of the transaction was the provision of services, the UCC does not apply.[14] Therefore, the trial court erred in instructing the jury on Heart of Texas Dodge's duties under the UCC.

2. The trial court's error in giving the UCC instruction was not harmless. If the contract at issue had been for the sale of goods, then Heart of Texas Dodge was required under the UCC to give Star Coach an opportunity to cure the defects before refusing to pay.[15] If the contract was for the provision of services, Heart of Texas Dodge was not required to give Star Coach such an opportunity, and the dealership could pursue its remedies for damages under general contract law.[16] Here, the jury was improperly instructed that Heart of Texas Dodge was obligated to provide Star Coach with a reasonable time in which to cure any defects. It is undisputed that Heart of Texas Dodge did not give Star Coach such an opportunity. Because the jury entered a verdict requiring that Heart of Texas Dodge pay

---

[12] See *D. N. Garner Co. v. Ga. Palm Beach &c. Corp.*, 233 Ga. App. 252, 255 (1) (504 SE2d 70) (1998).

[13] See generally *Mingledorff's, Inc. v. Hicks*, 133 Ga. App. 27, 28 (1) (209 SE2d 661) (1974) (contract to furnish and install air conditioning systems is one for labor, with an incidental furnishing of materials); compare *D. N. Garner*, supra (agreement by window company to sell and install windows in housing renovation project was predominantly a sales contract).

[14] See *Al & Zack Brown*, supra.

[15] See OCGA §§ 11-2-602 (1); 11-2-508 (2).

[16] See generally *Crolley v. Haygood Contracting*, 201 Ga. App. 700, 702 (3) (411 SE2d 907) (1991).

Star Coach the full amount of the contract, we cannot say that the error was harmless. The judgment of the trial court must be reversed, and a new trial is required.[17]

### Case No. A02A0779

3. In its cross-appeal, Star Coach contends that the trial court erred in denying its request for attorney fees because Heart of Texas Dodge asserted a defense which it could not have reasonably believed would be accepted by the court. Star Coach claims that since Heart of Texas Dodge admittedly did not comply with the requirements of the UCC, it had no viable defense. For the reasons discussed in Case No. A02A0778, this argument is without merit. Moreover, Heart of Texas Dodge set forth a reasonable defense regarding whether it owed the full amount prayed for in the complaint, given its claims of poor workmanship by Star Coach. The trial court did not abuse its discretion in denying Star Coach's request for attorney fees under OCGA § 9-15-14 (a) and (b).[18]

*Judgment reversed in Case No. A02A0778. Judgment affirmed in Case No. A02A0779. Blackburn, C. J., and Miller, J., concur.*

DECIDED JUNE 13, 2002.

*Clifton, Sanders & Smith, Russell W. Smith, Joshua D. Huckaby,* for appellant.

*McClure, Ramsay, Dickerson & Escoe, Allan R. Ramsay,* for appellee.

---

[17] See generally *OMAC,* supra.
[18] See generally *Glaza v. Morgan,* 248 Ga. App. 623, 624 (548 SE2d 389) (2001).