NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1346

MAG-NIF INCORPORATED

Plaintiff-Appellant,

v.

ROYAL SOVEREIGN INTERNATIONAL, INC., ROYAL SOVEREIGN CORPORATION,
and ROYAL CENTURIAN, INC.,

Defendants-Appellees.

_____

DECIDED: February 17, 2006

_____

Before RADER, SCHALL, and DYK, Circuit Judges.

DYK, Circuit Judge.

Mag-Nif Incorporated ("Mag-Nif") appeals from the district court's decision holding that Royal Sovereign International, Inc., Royal Sovereign Corporation, and Royal Centurian, Inc., (collectively "Royal Sovereign") were not in contempt of the district court's Stipulated Order of Dismissal. We affirm.

BACKGROUND

Mag-Nif is the owner of two patents pertaining to coin sorting machines. U.S. Patent No. 5,902,178 (filed Feb. 12, 1997) ("'178 patent"); U.S. Patent No. 6,165,063 (filed Feb. 10, 1999) ("'063 patent"). These patents relate to a coin sorting apparatus

that sorts various denominations of coins and deposits them into a plurality of tubes. Once a coin tube is filled in the patented device, additional coins conveyed down the coin chute slide over the top of the filled tube and are deposited into another coin tube of the same denomination. Because the patented coin sorter can automatically fill more than one tube during a round of coin-sorting, it can sort more coins with less interruption than other similar devices.

On December 7, 2001, Mag-Nif brought suit against Royal Sovereign claiming that Royal Sovereign's "Easy Sort" coin sorter, which had two coin tubes corresponding to each denomination, infringed both the '178 and '063 patents. By September 12, 2002, the parties signed a Settlement Agreement. In pertinent part, the Settlement Agreement stated that:

> ROYAL SOVEREIGN agrees that i[t] shall not make, ship, use, sell, offer for sale, or import in the United States any coin sorting apparatus that has two or more coin tubes corresponding to each denomination of coin sorted by the apparatus and that <u>permits coins to flow from a first coin tube to another coin tube</u> . . . .

Mag-Nif's Appendix ("App.") at 9 (emphasis added). The district court then entered a Stipulated Order of Dismissal, which provided that the court would "retain jurisdiction over the subject matter of this action, the Settlement Agreement and the parties for the purposes of enforcement of the Settlement Agreement referred to herein." App. at 3.

On March 31, 2004, Mag-Nif filed a motion to show cause why Royal Sovereign's new coin sorting machine, the "FS-3D" coin sorter did not violate the Settlement Agreement and Stipulated Order of Dismissal. The FS-3D has three coin tubes for each of four denominations (pennies, nickels, dimes, and quarters). The coin tubes proximate to the coin chute are for accepting the flow of coins from the chute, while the

front row holds empty coin tubes that the operator is to manually place in position when tubes in the sorting row become filled with coins. The FS-3D has a coin sensor that keeps track of the number of coins in each denomination that pass through the coin chute. This coin counting mechanism is designed to ensure that only a certain number of coins are released from the coin chute at a time so that there is no overflow of coins. Once a fixed amount of coins is channeled through the coin chute (fifty for pennies and dimes; forty for nickels and quarters), the machine automatically stops. The operator must then pull out the tray holding the full coin tube and replace it with an empty tube from the front row.

There are two situations in which a coin may be deposited into the wrong coin tube despite the coin counting mechanism. First, during normal operation the FS-3D occasionally misfires a coin so that it either lands in the wrong tube, or lands elsewhere. Dr. Joseph Prahl, Mag-Nif's expert witness, testified that when he ran 540 coins through the machine (to fill three coin tubes of each denomination) he observed that two nickels went into the incorrect nickel tube, one penny landed on top of the dime tube, one penny went into the incorrect penny tube, and one quarter landed on top of a nickel tube. Prahl testified that this demonstrated that the FS-3D deposits a coin into the wrong tube at a rate of approximately 0.74%.[1]

The second way a coin could enter an incorrect tube is when the operator intervenes to cause the machine to malfunction. Prahl testified and demonstrated to the district court that if the operator—in contravention of the machine's instructions—pulls

---

[1] Dr. Prahl testified that in his second run of 540 coins, the failure rate was roughly 0.9%.

05-1346

out the coin tube tray and then pushes it back without removing the full tube, the FS-3D will resume dispensing coins because the machine "does not know that [the] tube is filled and . . . will continue to fire coins out trying to fill what it thinks is that tube . . . ." App. at 87. In this, as Prahl put it, "contrived" state, coins will "flow over the top of that [full] tube and go to the next tube." App. at 87, 94. Royal Sovereign explains that when a full coin tube is placed where the machine expects to find an empty coin tube, the machine dispenses a round of coins which cannot enter the full tube and therefore "spill[ ] out in all directions, including the adjacent tube of the same denomination." Royal Sovereign's Br. at 10. Prahl described this operator-induced overflow as a "malfunction of the design."

The district court (Chief Judge Paul R. Matia) held that Royal Sovereign did not violate the Settlement Agreement because the "overflow possibility of the FS-3D is not commercially useable" and therefore FS-3D "does <u>not</u> 'permit[ ] coins to flow from a first coin tube to another coin tube' in contravention of the Settlement Agreement." App. at 5. Mag-Nif timely appealed.

DISCUSSION

The original claim in this case arose under the patent laws, 28 U.S.C. § 1338(a), and the Stipulated Order of Dismissal disposing of the original claim contained a provision retaining jurisdiction for purposes of enforcing the Settlement Agreement. Accordingly, as the district court's jurisdiction was based, in whole or in part, on 28 U.S.C. § 1338, we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a). See <u>Novamedix, Ltd. v. NDM Acquisition Corp.</u>, 166 F.3d 1177, 1179-80 (Fed. Cir. 1999).

05-1346

4

Whether a party has violated a settlement agreement is a mixed question of fact and law. Gilbert v. Dep't of Justice, 334 F.3d 1065, 1071 (Fed. Cir. 2003). A settlement agreement is simply a contract; therefore, we review the district court's interpretation of the settlement agreement without deference. Augustine Med., Inc. v. Progressive Dynamics, Inc., 194 F.3d 1367, 1370 (Fed. Cir. 1999).

The district court's construction of the Settlement Agreement requiring that the overflow possibility be "commercially usable" is incorrect. There is nothing in the language of the agreement establishing any such standard, and, on appeal, Royal Sovereign barely makes an effort to defend this particular interpretation—though it urged this interpretation on the district court in the first place.[2] Nevertheless, because the accused device clearly falls outside the scope of the Settlement Agreement, we agree with the district court's ultimate conclusion.

Mag-Nif argues that Royal Sovereign's FS-3D machine violates the Settlement Agreement because it permits coins to flow from a first coin tube to a second coin tube when it randomly misfires coins. The random misfiring of coins by the FS-3D does not cause the machine to violate the Settlement Agreement because the device does not cause "coins to flow from a first coin tube to another coin tube." App. at 9. In interpreting contract language, it is well established that we may appropriately look to dictionary definitions. See, e.g., Norfolk S. Ry. v. James N. Krby, Pty. Ltd., 543 U.S. 14,

---

[2] During its closing argument before the district court Royal Sovereign argued that neither the misfiring of coins nor the "rigging" of the machine causing an overflow of coins was commercially significant because no one would purchase the FS-3D if what he wanted was a machine that permitted coins to continuously flow from a first coin tube to a second coin tube. Therefore, Royal Sovereign argued, the settlement agreement was not intended to prohibit the FS-3D.

05-1346

31-32 (2004) (defining the word "any" in a contract using the dictionary); Stewart v. United States, 316 U.S. 354, 362 & n.6 (1942) (defining the word "island" in a deed using the dictionary); Shear v. W. Am. Ins. Co., 464 N.E.2d 545, 548 (Ohio 1984) (citing to Webster's Third New International Dictionary to define contract terms); Felton v. Nationwide Mut. Fire Ins. Co., 839 N.E.2d 34, 37 (Ohio Ct. App. 2005) (same).

The primary dictionary definition of the word "flow" is "to issue in a stream" or "to move with a continual change of place among the constituent particles or parts." Webster's Third New International Dictionary of the English Language Unabridged 875 (2002). The background of the Settlement Agreement here supports the use of this definition. As part of the Settlement Agreement, Royal Sovereign agreed not to make, use, sell, etc., a coin sorting machine with the key feature of Mag-Nif's patented product. Mag-Nif's patented coin sorting machine fills a first coin tube and then, upon that coin tube becoming filled to capacity, permits additional coins to automatically slide over the first filled tube in a continuous stream into a second coin tube.

By contrast, the FS-3D's random misfiring of coins is not a "flow." The evidence before the district court demonstrated that at a rate of less than one percent, coins randomly misfire, falling in the coin tray, on the coin tubes of other denominations, and occasionally in a second tube of the correct denomination. There was no evidence that this random misfiring resulted in a continual stream of coins, one after another, into a second coin tube. Thus Mag-Nif's argument, that the misfiring of coins breached the settlement agreement, must fail.

Mag-Nif's alternative contention—that an operator-induced malfunction can cause a flow of coins to occur in violation of the Settlement Agreement—is equally

unavailing. As Dr. Prahl testified and demonstrated to the district court, an operator acting contrary to the instructions provided with the machine,[3] can cause the FS-3D to dispense coins into an already filled-tube by pulling out the coin tube tray and pushing it back in without removing the full tube. This causes the machine to resume dispensing coins, resulting in coins spilling over the top of the full coin tube and into a second coin tube. That the FS-3D could be "tricked" into such a malfunction does not mean that the machine violated the Settlement Agreement. Even if the coins "flowed" to a second tube during this contrived state, the FS-3D cannot be said to "permit" coins to flow from a first coin tube to another coin tube if the only way coins can flow in this manner is when the operator deliberately induces the machine to malfunction.

For the foregoing reasons, the decision below is affirmed.

No costs.

---

[3] The "Directions" section of the FS-3D owner's manual states: "[w]hen a tube is full, replace with the spare tube. Push the tube tray back all the way to continue sorting." The "Procedure" section further states: "[w]hen a coin tube becomes full the machine automatically stops. Slide the tray with the full tube forward to automatically restart the machine and fill the back row. As the back row is being filled, remove and replace the filled coin tube from the front row position. Repeat process in reverse as the back row is filled."

05-1346