A08A0658. HANSON STAPLE COMPANY v. OLÉ MEXICAN FOODS, INC.

(666 SE2d 398)

SMITH, Presiding Judge.

Hanson Staple Company ("Hanson") appeals from the trial court's order interpreting and enforcing a settlement agreement between it and Olé Mexican Foods, Inc. ("Olé"). For the reasons set forth below, we reverse.

The record shows that Hanson filed suit against Olé for breach of contract and expenses of litigation in connection with Olé's failure to purchase packaging items specially manufactured for Olé by Hanson. In its complaint, Hanson alleged that Olé sent an e-mail to it on February 13, 2006, cancelling all purchase orders for new stock from Hanson because Olé was "in process to change to a new supplier." Hanson alleged that at the time this e-mail was sent, the Hanson sales representative in charge of Olé's account "was in the process of resigning." An e-mail from Olé's representative sent on April 19, 2006, confirmed that Olé had decided to get its packaging

through Hanson's former employee. Hanson alleged that it had inventory worth $308,282.78 specially manufactured for Olé pursuant to a course of dealing between the parties. According to Hanson, the custom packaging was "not suitable for sale to any other entity."

In its answer, Olé denied all liability and asserted a counterclaim against Hanson for "shipping defective product." It admitted the validity of e-mails between the parties. None of the e-mails from an Olé representative asserted that it changed suppliers due to a problem with the quality of Hanson's product.

On April 9, 2007, Hanson's vice president and Olé's chief financial officer met together outside the presence of counsel and negotiated the following handwritten settlement agreement:

> (1) Olé will purchase a minimum of $130,000 worth of current inventory from KHL Hanson.

> (2) Olé will test the remainder of inventory and will purchase additional inventory if it meets quality expectations.

> (3) Olé will now begin to do business with KHL Hanson. Hanson will work hard to become a supplier once again.[1]

On June 29, 2007, Hanson moved the trial court to enforce the settlement agreement, alleging that Olé refused to perform. Hanson asked, in the alternative, that if the trial court denied the motion to enforce the settlement agreement, it should also extend the discovery period for two months to allow Hanson to pursue its breach of contract case against Olé.

On August 1, 2007, Olé filed a brief in opposition in which it asserted that the settlement agreement included additional terms that the parties did not reduce to writing, such as Hanson's promise to "immediately dismiss the pending lawsuit" and "that the parties would work out their differences without the assistance of counsel." Olé also asserted that Hanson violated the agreement by "insisting that [Olé] buy its goods regardless of their merchantability, . . . refused to accept [Olé]'s definition of Quality Expectations and . . . refused [Olé]'s payment terms." Olé supported its position by arguing that the implied warranty of merchantability found within Georgia's Uniform Commercial Code (UCC) should be applied to the settlement agreement because it was a contract for the sale of goods.

---

[1] Hanson concedes in its brief that "[t]he parties are in agreement that the third provision of the Agreement is an agreement to agree and is therefore unenforceable."

The trial court scheduled a hearing on the motion for Monday, August 20, 2007. On Friday, August 17, 2007, Olé filed an affidavit from its chief financial officer in which she asserted that Olé experienced "defective and non-conforming product issues with the bags supplied by Hanson." Olé's complaints included "problems with color, with sticking (during delivery and the shelf life of the product), failure to seal, label discoloration, incorrect or inadequate labeling, incorrect or outdated art work and melting during the packaging process." She further claimed that "Olé sought to purchase Hanson's remaining inventory on an as needed basis but only through its former salesman due to his knowledge of the above-noted issues of defective and nonconforming product." She admitted that during settlement negotiations, the parties identified $138,425.34 "worth of product which met Olé's initial 'Quality Expectations.' " Nonetheless, she concluded "[i]t was clear from the parties' negotiations that Olé agreed only to purchase merchantable product." Finally, she explained that the settlement derailed when the parties attempted to negotiate a more detailed agreement with the assistance of counsel.

After a hearing, the trial court issued the following order enforcing the settlement:

> Olé will purchase a minimum of $130,000 worth of the $138,425.34 Hanson product inventory identified in Exhibit A. Such purchases will be governed by the Georgia Uniform Commercial Code, and Olé shall retain the right to reject Hanson product pursuant to the Georgia Uniform Commercial Code. The Court hereby finds that the remaining provisions of the settlement agreement to be superfluous and thus unenforceable. The above-styled case is hereby dismissed with prejudice.

1. Hanson asserts that the trial court erred by applying the implied warranties of the Georgia UCC to its settlement agreement with Olé. This appears to be an issue of first impression in Georgia.

Other jurisdictions addressing this issue have determined that the UCC should not apply to settlement agreements arising out of a dispute concerning an initial sale of goods under the UCC. *ITT Corp. v. LTX Corp.*, 926 F2d 1258, 1266-1268 (1st Cir. 1991) (holding UCC did not apply to settlement agreement in light of parties' aim to settle issue of quality of goods); *New England Power Co. v. Riley Stoker Corp.*, 477 NE2d 1054 (Mass. App. 1985) (holding UCC did not apply to settlement agreement); *Scap Motors v. Pevco Systems Intl.*, 1999 Conn. Super. LEXIS 2230, Slip Op. at 8 (August 12, 1999) (same); *Ross-Simons of Warwick v. Baccarat, Inc.*, 182 FRD 386, 394

(D. R.I. 1998) (same); *Beijing Metals &c. Corp. v. American Business Center*, 993 F2d 1178, 1183, n.10 (5th Cir. 1993) (holding UCC did not apply because agreement "more closely resembles a settlement agreement, as opposed to a sale of goods").

Some of these jurisdictions have approached the analysis by applying the "predominant purpose" test typically used to determine if a contract should be categorized as one for the sale of goods, governed by the UCC, or as one for the sale of services that does not fall within the ambit of the UCC. See, e.g., *Novamedix v. NDM Acquisition Corp.*, 166 F3d 1177, 1181-1184 (Fed. 1999). If the predominant purpose of the settlement agreement is *not* the sale of goods, the UCC does not apply. Id. at 1183-1184. See also *Tseng v. Home Depot USA*, 2006 U. S. Dist. LEXIS 37306, Slip Op. at 13-15 (W.D. Wash. 2006).

In this case, we find the reasoning of the First Circuit in *ITT Corp.*, supra, particularly pertinent. In that case, the First Circuit refused to apply the implied warranties embodied in the UCC when the primary purpose of the settlement agreement was to resolve the parties' dispute about the application of these implied warranties. *ITT Corp.*, supra at 1266. The First Circuit also held that even if the UCC somehow applied to the parties' settlement agreement, "any implied warranty of merchantability was excluded by the course of dealing between [the parties]." Id.

> The conduct and negotiations between the parties [leading] up to the . . . settlement agreement establish a common basis of understanding that the responsibility for the failure [of the product] was the central point the agreement would resolve. By virtue of this understanding, the parties could not possibly have expected that the settlement agreement would resolve this point *by operation of an implied warranty*.

Id. at 1268.

In this case, the primary purpose of the settlement was to resolve a dispute between the parties about (1) whether Olé was obligated to purchase any goods from Hanson and (2) whether Hanson's goods were merchantable. Construing the settlement agreement as a whole, we find that the implied warranties of the UCC should not be applied to it. *ITT Corp.*, supra at 1266. We also find, in the alternative, that the parties excluded implied warranties of the UCC from their settlement agreement based upon their course of conduct. Id. at 1268. See also OCGA § 11-2-316 (3) (c) (implied warranty can be excluded based upon course of dealing between the parties).

YALE LAW LIBRARY

Based upon this conclusion, we find that the trial court erred by failing to enforce Paragraph 1 of the settlement agreement as written: "Olé will purchase a minimum of $130,000 worth of current inventory from KHL Hanson."

2. Hanson also argues that the trial court erred by failing to enforce Paragraph 2 of the settlement agreement: "Olé will test the remainder of the inventory and will purchase additional inventory if it meets quality expectations." Both parties agree in their briefs that the term "quality expectations" refers to Olé's subjective quality expectations.

"Contracts in which the promise of one party to render performance is conditional on his own judgment and sensibilities have been almost universally upheld, being generally considered as requiring a performance which should be satisfactory to him in the exercise of an honest judgment. . . ." (Citation and punctuation omitted.) *Century Health Care v. Willis*, 205 Ga. App. 369, 370 (422 SE2d 65) (1992). See also *American Game &c. v. Knighton*, 178 Ga. App. 745-746 (1) (344 SE2d 717) (1986) (contract provision would not allow party to terminate the contract in bad faith by feigning dissatisfaction for the purpose of avoiding the contract). Based upon this well-settled law, the trial court erred by failing to enforce Paragraph 2 of the parties' settlement agreement as written.

*Judgment reversed. Mikell and Adams, JJ., concur.*

DECIDED JUNE 26, 2008 —
RECONSIDERATION DENIED JULY 24, 2008 — 

*Seyfarth Shaw, Michael P. Elkon, Clifton B. Welch*, for appellant.
*Goico & Bolet, Albert J. Bolet III, Bogart & Bogart, George R. Ference, Bondurant, Mixson & Elmore, Nicole Iannarone*, for appellee.