## S08G2029. OLÉ MEXICAN FOODS, INC. v. HANSON STAPLE COMPANY.

(676 SE2d 169)

CARLEY, Justice.

Appellee Hanson Staple Company brought suit for breach of contract, alleging that Appellant Olé Mexican Foods, Inc. failed to purchase over $300,000 worth of packaging which was specially manufactured by Appellee for Appellant. In its answer, Appellant denied all liability and asserted in a counterclaim that Appellee had "breached its agreement with [Appellant] by shipping defective product." Thereafter, the parties negotiated a handwritten "agreement reached in settlement," outside the presence of counsel, which provided, in relevant part, that Appellant would "purchase a minimum of $130,000 worth of current inventory from" Appellee and would "test the remainder of inventory and . . . purchase additional inventory if it meets quality expectations." On a motion to enforce the settlement agreement, the trial court ordered Appellant to "purchase a minimum of $130,000 worth of [certain of Appellee's] product inventory" and that such purchases would "be governed by the Georgia Uniform Commercial Code [UCC], and [Appellant] shall retain the right to reject [Appellee's] product pursuant to the Georgia [UCC]."

On appeal, the Court of Appeals reversed, ruling that the trial court erred in applying the implied warranties of the UCC to the settlement agreement, because the primary purpose of the settlement, construed as a whole, "was to resolve a dispute between the parties about (1) whether [Appellant] was obligated to purchase any goods from [Appellee] and (2) whether [Appellee's] goods were merchantable." *Hanson Staple Co. v. Olé Mexican Foods*, 293 Ga. App. 4, 7 (1) (666 SE2d 398) (2008). The Court of Appeals also found, "in the alternative, that the parties excluded implied warranties of the UCC from their settlement agreement based upon their course of conduct. [Cits.]" *Hanson Staple Co. v. Olé Mexican Foods*, supra. In Division 2 of its opinion, the Court of Appeals further determined, contrary to the trial court, that the second provision of the agreement, which refers to Appellant's subjective quality expectations, is enforceable. *Hanson Staple Co. v. Olé Mexican Foods*, supra at 8 (2). Having granted certiorari to clarify if and when the implied warranties found in the UCC apply to settlement agreements involving the sale of goods, we hold that those implied warranties are applicable to such an agreement only if its predominant purpose is the sale of goods and not the settlement of litigation.

The implied warranties of the UCC are found in Article 2. OCGA §§ 11-2-314 (merchantability), 11-2-315 (fitness for a particular purpose). "Article 2 of the UCC is expressly limited to

transactions involving the sale of goods. [Cit.]" *Heart of Texas Dodge v. Star Coach*, 255 Ga. App. 801, 802 (1) (567 SE2d 61) (2002). See also OCGA §§ 11-2-102, 11-2-106 (1). Thus, the implied warranties of the UCC arise out of a contract for the sale of goods. See *McQueen v. Minolta Business Solutions*, 275 Ga. App. 297, 300 (2) (620 SE2d 391) (2005); *Entertainment Developers v. Relco*, 172 Ga. App. 176 (1) (322 SE2d 304) (1984). "If a contract involves only the sale of goods, the UCC applies. [Cit.]" *Heart of Texas Dodge v. Star Coach*, supra. However, "[d]ifficulty arises in determining whether the UCC applies to a hybrid contract," such as one involving both goods and services. *J. Lee Gregory, Inc. v. Scandinavian House*, 209 Ga. App. 285, 287 (1) (433 SE2d 687) (1993). See also *Heart of Texas Dodge v. Star Coach*, supra.

When difficulties in interpreting the UCC arise, it "shall be liberally construed and applied to promote its underlying purposes and policies." OCGA § 11-1-102 (1). Those purposes and policies are

> (a) To simplify, clarify, and modernize the law governing commercial transactions; (b) To permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; [and] (c) To make uniform the law among the various jurisdictions.

OCGA § 11-1-102 (2). Consistent with and mindful of these purposes and policies, we will now proceed to further construction of the UCC with the assistance of persuasive authority from other jurisdictions.

> The world of commercial transactions is not limited to [a] binary world . . . in which an agreement that passes title to Article 2 goods must be either a contract for sale of goods or a contract for sale of services. Many commercial transactions are not governed by Article 2 of the UCC . . . . The mere fact that title to Article 2 goods changes hands during one of these transactions does not by that fact alone make the transaction a sale of goods. [Cits.] Here, the mere fact that the parties' settlement agreement includes the transfer of personal property in its provisions does not make it a simple sale of goods . . . . [I]t is a mixed contract, similar to a mixed contract for the provision of both goods and services. It should therefore be analyzed as a mixed contract.

*Novamedix v. NDM Acquisition Corp.*, 166 F3d 1177, 1182 (Fed. Cir. 1999). See also *Beijing Metals & Minerals Import/Export Corp. v. American Business Center*, 993 F2d 1178, 1183 (II) (A) (5th Cir.

1993) (where UCC inapplicable because agreement "more closely resembles a settlement agreement, as opposed to a sale of goods"). Analysis as a mixed contract effectively "permit[s] the continued expansion of commercial practices through custom, usage, and agreement of the parties . . . ." OCGA § 11-1-102 (2) (b). "[I]f a contract contains a blend of sale and nonsale elements, Article Two applies only if the dominant purpose behind the contract reflects a sales transaction. [Cits.]" *Ross-Simons of Warwick v. Baccarat*, 102 F3d 12, 17 (II) (B) (2) (1st Cir. 1996).

Likewise, under Georgia law, "[t]o determine whether a sales contract is governed by the UCC, 'we must look to the primary or overall purpose of the transaction.' [Cit.]" *Crews v. Wahl*, 238 Ga. App. 892, 900 (4) (a) (520 SE2d 727) (1999).

> "When presented with two elements of a contract, each absolutely necessary if the subject matter is to be of any significant value to the [parties], it is a futile task to attempt to determine which component is 'more necessary.' Thus, (we must look) to the predominant purpose, the thrust of the contract as it would exist in the minds of reasonable parties. There is no surer way to provide for predictable results in the face of a highly artificial classification system." [Cit.]

*J. Lee Gregory, Inc. v. Scandinavian House*, supra at 288 (1). Therefore, the "predominant purpose" test is a way, consistent with the text of the UCC, to "simplify, clarify, and modernize the law governing commercial transactions . . . ." OCGA § 11-1-102 (2) (a).

> When the predominant element of a contract is the sale of goods, the contract is viewed as a sales contract and the UCC applies, even though a substantial amount of service is to be rendered in installing the goods. [Cit.] When, on the other hand, the predominant element of a contract is the furnishing of services, the contract is viewed as a service contract and the UCC does not apply. [Cits.] A contract for services and labor with an incidental furnishing of equipment and materials is not a transaction involving the sale of goods and is not controlled by the UCC. [Cit.]

*Heart of Texas Dodge v. Star Coach*, supra. See also *J. Lee Gregory, Inc. v. Scandinavian House*, supra at 287-288 (1).

"Although the present settlement agreement is not a mixed goods/services contract, the same analysis is applicable to determine whether it should be treated as a contract for the sale of goods."

*Novamedix v. NDM Acquisition Corp.*, supra at 1183. We adopt that analysis for settlement agreements involving the sale of goods, as it is most consistent with the weight of authority and with Georgia law. *Novamedix v. NDM Acquisition Corp.*, supra; *Ross-Simons of Warwick v. Baccarat*, supra; *Akrosil Div. of Intl. Paper Co. v. Ritrama Duramark*, 847 FSupp. 623, 627 (III) (E.D. Wis. 1994). Compare *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 219 FSupp.2d 600, 612 (III) (E) (D.N.J. 2002) (this case distinguishes precedent cited herein, although it is apparently the only case "question[ing] the propriety of applying" this analysis). "Consequently, Article Two is not in play if the dominant purpose of an agreement is to settle litigation. [Cits.]" *Ross-Simons of Warwick v. Baccarat*, supra. As Presiding Judge Smith accurately stated, "[i]f the predominant purpose of the settlement agreement is *not* the sale of goods, the UCC does not apply. [Cits.]" (Emphasis in original.) *Hanson Staple Co. v. Olé Mexican Foods*, supra at 7 (1). "Thus, the UCC's implied warranties of merchantability and fitness apply to the settlement agreement [here] only if its predominant purpose was for the sale of [packaging]." *Novamedix v. NDM Acquisition Corp.*, supra.

The fact that the document at issue is labeled "agreement reached in settlement" "is a good barometer of the parties' intentions. Though the label that contracting parties affix to an agreement is not necessarily determinative of the agreement's predominant purpose, it can constitute potent evidence of that purpose." *Ross-Simons of Warwick v. Baccarat*, supra. See also *New England Power Co. v. Riley Stoker Corp.*, 477 NE2d 1054, 1060 (IV) (Mass. App. 1985). Furthermore, the agreement involves a sale of the very same goods which were the subject of a previous alleged sales contract and ensuing litigation between the parties.

An additional indication of the essential nature of the agreement as a settlement is the fact that it arose out of litigation which involved more than the mere obligation vel non to purchase goods. *Novamedix v. NDM Acquisition Corp.*, supra. In the litigation, Appellant complained of defective goods and, indeed, submitted an affidavit asserting that it had suffered damages from packaging which had "problems with color, with sticking (during delivery and the shelf life of the product), failure to seal, label discoloration, incorrect or inadequate labeling, incorrect or outdated art work and melting during the packaging process." Thus, the litigation being settled included the issue of whether the goods were merchantable and fit for a particular purpose. As the Court of Appeals properly determined, the parties' aim to settle this very issue creates strong doubt that the primary purpose of their agreement was a sale of goods subject to application of the same implied warranties of Article 2. *Hanson Staple Co. v. Olé Mexican Foods*, supra; *ITT Corp. v. LTX*

*Corp.*, 926 F2d 1258, 1266 (IV) (1st Cir. 1991). Application of those warranties would frustrate the settlement purpose of the agreement.

Furthermore, the $130,000 sale of goods constituted less than half the value of the inventory specified in Appellee's complaint. The Court of Appeals correctly recognized that the parties' agreement validly permitted Appellant to determine well over half of its alleged purchase obligation in accordance with its own subjective quality expectations. *Hanson Staple Co. v. Olé Mexican Foods*, supra at 8 (2). A sale of goods pursuant to Article 2 clearly was not the predominant purpose for at least that provision of the agreement which dealt with the larger proportion of the inventory in dispute. At most, only the smaller, $130,000 proportion could be deemed a sale of goods, which would suggest that the parties' agreement was a contract to settle litigation with any sale of goods merely incidental. See *Southern Tank & Equipment Co. v. Zartic*, 221 Ga. App. 503, 504 (471 SE2d 587) (1996); *J. Lee Gregory, Inc. v. Scandinavian House*, supra at 288 (1).

"Considering the totality of circumstances presented in this case . . . , it can hardly be said that the [settlement of litigation] was merely incidental to the contract. [Cits.]" *Heart of Texas Dodge v. Star Coach*, supra at 804 (1). Because that was instead "the predominant character of the transaction . . . , the UCC does not apply. [Cit.]" *Heart of Texas Dodge v. Star Coach*, supra. Therefore, we affirm the holding of the Court of Appeals that, "[c]onstruing the settlement agreement as a whole, we find that the implied warranties of the UCC should not be applied to it. [Cit.]" *Hanson Staple Co. v. Olé Mexican Foods*, supra at 7 (1). If Appellant had "desired a warranty as to the quality of the [packaging], it could have bargained for inclusion of one in the agreement; having chosen to forego an express warranty during the contract negotiations, it must now live with the consequences." *Novamedix v. NDM Acquisition Corp.*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 28, 2009.

*Goico & Bolet, Albert J. Bolet III, Bogart & Bogart, George R. Ference, Bondurant, Mixson & Elmore, Frank M. Lowrey IV, Nicole G. Iannarone*, for appellant.

*Seyfarth Shaw, Michael P. Elkon, Clifton B. Welch*, for appellee.