A98A1500. D. N. GARNER COMPANY, INC. v. GEORGIA PALM BEACH ALUMINUM WINDOW CORPORATION.
(504 SE2d 70)

ELDRIDGE, Judge.

D. N. Garner Company, Inc. ("Garner") brought suit against Georgia Palm Beach Aluminum Window Corporation ("Georgia Palm") to recover damages for an alleged breach of contract. Georgia Palm filed a motion for summary judgment. The trial court determined that a contract did not exist between the parties and granted summary judgment to Georgia Palm. Garner appeals, asserting that the trial court erred in granting Georgia Palm's motion.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. See, e.g., *Holiday Inns v. Newton*, 157 Ga. App. 436 (278 SE2d 85) (1981). A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Garner, who is a general contractor, alleged in its complaint that it won a contract to renovate The Little River Apartments for the Carrollton Housing Authority. In submitting its bid for the renova-

tion, Garner relied on an offer in the amount of $40,027 from Georgia Palm for the sale and installation of the windows. Garner further alleged that, before it was awarded the contract for the renovation, it entered into a contingent contract with Georgia Palm to furnish windows for the renovation project which met the specifications of the architect at the price set out in their initial offer, plus tax. Garner claimed Georgia Palm breached the contract and sought damages for the additional price it had to pay for the windows from another source and for its delay in completing the renovation timely.

On Georgia Palm's motion for summary judgment, the following evidence was adduced via affidavits: Georgia Palm ascertained through an industry service entitled the "Dodge Daily Bulletin" that the Carrollton Housing Authority was engaged in the modernization of some of its apartments and that Garner intended to bid on the project as the general contractor. Prior to making a written offer to Garner, Georgia Palm submitted the specifications for its model S-1100 window to the architect for the Carrollton Housing Authority. On June 27, 1996, Georgia Palm made a written offer to Garner to sell certain sizes and quantities of its model S-1100 aluminum windows for the price of $40,027, plus tax. This offer stated that it was open to Garner for a 30-day period. The model S-1100 window in Georgia Palm's offer was identical to the model S-1100 window submitted to the architect for approval.

Georgia Palm's president, W. M. Jordan, Jr., averred that Georgia Palm's offer to sell to Garner was only for the model S-1100 windows in the size and quantity shown on its offer; that Georgia Palm never offered to sell or provide Garner with any windows except the model S-1100; that the model S-1100 window did not have and had never had a tilt sash that could be removed; and that such offer was never accepted by Garner and was specifically refused. Mr. Jordan further averred that at all times Georgia Palm stood ready, willing, and able to sell to Garner the model S-1100 windows at the price and quantities set out in its offer.

In further support of its position, Georgia Palm also submitted the affidavit of its attorney, Ben Kirbo, who averred that Garner never produced a copy of any contract in response to its request for production of documents seeking a copy of the contract it allegedly had with Georgia Palm for windows which met the specification of the architect. In response to such request, Garner stated that "the specifications of the architect was [sic] obtained by [d]efendant directly from the architect. Enclosed is a letter from Georgia Palm where the shop drawings made to the specification were sent" to the architect. A copy of the letter is not part of the record in this case. On October 1, 1996, Georgia Palm submitted shop drawings and sample windows to the housing authority.

In response to Georgia Palm's motion for summary judgment, Garner submitted two affidavits of the president of the corporation, Dale Garner. According to Mr. Garner, on at least two occasions, the parties agreed that Georgia Palm would supply and install the windows necessary to complete the renovations. Mr. Garner further averred that Garner's acceptance of Georgia Palm's offer was conditioned upon Georgia Palm satisfying the condition precedent of assuring that the windows met project specifications and were approved by the architect and the housing authority.

Mr. Garner further stated that, prior to submitting its bid, Georgia Palm had assured him that its windows met project specifications and that it had obtained the necessary approval from the architect. Mr. Garner averred that, when he was initially contacted by Georgia Palm, Mr. Jordan stated that he had checked the specifications, that the windows on his offer complied with the specifications, and that he had been in contact with the architect and had everything worked out on the windows with the exception of: (1) whether a thermal break would be required and (2) the exact number and sizes of the windows. Mr. Garner further averred that he determined the exact window count and size for Georgia Palm and that Mr. Jordan later stated to him that the housing authority would not require that the windows have a thermal break. Georgia Palm then submitted to Garner its written offer to supply and install the model S-1100 window. After Garner received Georgia Palm's written offer, the parties agreed that, if Garner was awarded the contract, Georgia Palm would furnish and install the windows under Georgia Palm's written offer.

It is undisputed by the parties that, prior to submitting its offer, Georgia Palm had forwarded to the supervising architect for the project drawings and written specifications for the model S-1100 window. There is no evidence in the record that, prior to Garner submitting its bid as the general contractor, either the housing authority or the architect communicated with either party as to whether the model S-1100 window was acceptable. Mr. Garner averred that the model S-1100 is not a standard model number used in the industry and that such number is used only by Georgia Palm. Mr. Garner stated that, in submitting his company's bid on the project, he relied on Mr. Jordan's representations that he had checked the specifications for the project, that the model S-1100 windows complied with such specifications, and that he had received approval for the model S-1100 window from the architect. A copy of the project specifications is not part of the record.

Relying on these representations and accepting the quote in Georgia Palm's offer, Garner then submitted its bid for the renovation job. Garner was awarded the contract for the renovation project.

Mr. Garner averred that after Garner was awarded the contract, the parties once again agreed that Georgia Palm would furnish and install the windows and that, at such time, Georgia Palm, once again, assured Mr. Garner that it would get any further approval that was necessary from the housing authority.

Georgia Palm submitted both shop drawings for and a model of its model S-1100 window to the housing authority. The model, drawings, and written specifications submitted to the architect and the housing authority, both prior to and subsequent to Georgia Palm's offer, did not show that the model S-1100 window had a tilt down sash that was removable.

After the renovation project was commenced, the housing authority rejected the model S-1100 window because it did not have a tilt down sash which could be removed and repaired at another location. Georgia Palm refused to furnish a window with a tilt down sash that could be removed at the bid price. Garner purchased the window from another supplier.

1. Before this Court can address the issue of whether a contract did, in fact, exist between the parties, we must determine if the provisions of the Uniform Commercial Code ("UCC") apply.

The alleged contract involved a mixed sale of goods and services. In such mixed contracts, "[w]hen the predominant element of a contract is the sale of goods, the contract is viewed as a sales contract and the UCC applies even though a substantial amount of service is to be rendered in installing the goods. When, on the other hand, the predominant element of a contract is the furnishing of services, the contract is viewed as a service contract and the UCC does not apply. As it is said: A contract for services and labor with an incidental furnishing of equipment and materials is not a transaction involving the sale of goods and is not controlled by the UCC. Factors to be considered in determining the predominant element of a contract include the proportion of the total contract cost allocated to the goods and whether the price of the goods is segregated from the price for services. A smaller proportion of the total price assignable to services, or a failure to state a separate price for services rendered, suggest a contract for the sale of goods with services merely incidental." (Citations and punctuation omitted.) *Southern Tank &c. Co. v. Zartic*, 221 Ga. App. 503, 504 (471 SE2d 587) (1996); *J. Lee Gregory v. Scandinavian House*, 209 Ga. App. 285 (433 SE2d 687) (1993).

Georgia Palm's bid did not segregate the total price of the windows from the total price of the services to be rendered. Under the facts of this case, "[i]t can hardly be said that the sale of the windows was 'incidental' to the transaction. Rather it would appear that the rendition of services was the incidental factor." *J. Lee Gregory v. Scandinavian House*, supra at 288. Therefore, even though a sub-

stantial amount of service was involved in installing the goods, the predominant character of the transaction was the sale of goods, and the provisions of the UCC apply.

2. Having determined that the UCC applies, we must look to the UCC to determine if Georgia Palm and Garner had entered into a contract for the sale and installation of windows that meet the project's specifications and if these specifications required windows with tilt sashes.

"The UCC provides, in part: 'A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.' OCGA § 11-2-204. It adds: 'An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.' These (and other) provisions make it clear that the UCC 'expands our conception of contract. It makes contracts easier to form, and it imposes a wider range of obligations than before. Contract formation is easier in several ways. Parties may form a contract through conduct rather than merely through the exchange of communications constituting "offer and acceptance." Further, Article Two reduces the formalities required for contract formation. The statute of frauds (section 2-201) requires only a writing that "indicates" a contract was made, and 2-206 and 2-207 (1) abandon the requirement that an acceptance must coincide precisely with all terms of the offer. Section 2-204 (3) states: "Even though one or more terms are left open[,] a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." ' [Cit.]" *J. Lee Gregory v. Scandinavian House*, supra at 288-289.

Under these expanded concepts of contract formation, Garner has produced sufficient evidence in rebuttal to Georgia Palm's motion for summary judgment to establish that material issues of fact exist for determination by a jury. Material issues of fact exist as to whether there was an acceptance of the written offer by Georgia Palm to furnish and install windows for the project and whether such offer was simply for model S-1100 windows or for windows which met the specifications for the project. If it is determined that the offer was for windows which met the specifications of the project, a material issue of fact exists as to whether the model S-1100 windows met the project specifications.

From the pleading and the evidence, it is apparent that, on remand, Georgia's equity doctrine of promissory estoppel may arise. Therefore, material issues of fact also exist as to whether Georgia Palm made promises to Garner which Garner relied upon, whether Georgia Palm reasonably expected to induce action or forbearance on the part of Garner, and whether such reliance on the part of Garner

was reasonable.

Since material issues of fact exist, the trial court erred in granting summary judgment to Georgia Palm.

*Judgment reversed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JULY 2, 1998.

*Michael E. Garner*, for appellant.
*Kirbo & Kendrick, Ben Kirbo*, for appellee.