A06A2007. HENRY v. BLANKENSHIP.

(644 SE2d 419)

MIKELL, Judge.

This is the second appearance of this case before us. In *Henry v. Blankenship,*[1] we affirmed the trial court's grant of summary judgment to Milton Blankenship, the holder of an option to buy Clifford Henry's 28-acre parcel of land, on Henry's counterclaim for fraud, but reversed the trial court's grant on Henry's counterclaim for breach of contract and Blankenship's own claim for specific performance.[2] On remand, the trial court again granted Blankenship summary judgment on Henry's counterclaim. Henry appeals, arguing that the parties' oral agreement concerning the disposal of car skeletons on the property is not barred by the UCC Statute of Frauds and statute of limitation. We agree and reverse.

On appeal from the grant of summary judgment, this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[3]

So viewed, the record shows that this dispute arises from two agreements dating from December 1997. The first was a written agreement under which Blankenship agreed to buy fifteen acres of

---

[1] 275 Ga. App. 658 (621 SE2d 601) (2005).

[2] Id.

[3] (Citation and punctuation omitted.) Id.

Ella Mae Henry's junkyard property for $15,000 per acre, and also obtained a ten-year option to buy the remaining 28.32 acres at $15,000 plus six percent "per annum added to the $15,000 per acre, per year." The second was an oral agreement providing that Blankenship would, among other things, (1) begin operating a car skeleton processing plant within six to fifteen months; (2) purchase as many car skeletons generated by the junkyard as Clifford Henry wanted to sell him, at a certain premium over market price; and (3) allow all junk vehicles on the property to remain there until they were processed at the new plant. However, Blankenship never built or operated such a plant on the property, never purchased any junk vehicles from the junkyard, and eventually demanded that all junk vehicles be removed from the property.[4]

In January 2004, Blankenship exercised his option to purchase the remaining 28.32-acre parcel and brought an action for specific performance soon afterward. Henry answered and counterclaimed for breach of contract and fraud. The trial court granted partial summary judgment and specific performance to Blankenship, and Henry appealed. We reversed on the breach of contract and specific performance claims, reasoning that (1) Blankenship's promise concerning the processing plant and car skeletons were not only enforceable, but also capable of performance within a year, and thus outside Georgia's Statute of Frauds;[5] and (2) issues of fact remained concerning Blankenship's breach of the oral contract, and thus concerning the equities in his action for specific performance.[6]

On remand, Blankenship again moved for summary judgment on Henry's counterclaim, arguing that it was barred by the UCC Statute of Frauds and statute of limitation.[7] The trial court agreed and granted Blankenship's motion. On appeal, Henry argues that summary judgment on the counterclaim should not have been granted because the UCC does not apply to the agreements, and because even if the UCC does apply, the agreements are not barred by either statute.

1. As a preliminary matter, we reject Henry's contention that the UCC does not apply to the oral agreement concerning the purchase and processing of car skeletons because the agreement is not one for the sale of goods.[8]

---

[4] Id. at 659.

[5] Id. at 660-661 (1) (a); see also OCGA § 13-5-30 (5) ("Any agreement that is not to be performed within one year from the making thereof" must be in writing to be enforceable against the promisor).

[6] *Henry*, supra at 662 (2).

[7] See OCGA §§ 11-2-725; 11-2-201.

[8] See OCGA § 11-2-102.

"When the predominant element of a contract is the sale of goods, the contract is viewed as a sales contract and the UCC applies, even though a substantial amount of service is to be rendered in installing the goods."[9] Henry himself was not a party to the 1997 purchase and sale agreement concerning the 15-acre parcel identified as the site of the proposed car processing plant; that agreement was made between Henry's wife and Blankenship. At his deposition, moreover, Henry testified:

> I had no reason to talk to [Blankenship] about the car crusher. It was his baby. He bought the land. He owned the crusher, and he put it on there. *The only agreement that I had with him [was] to sell him cars or any scrap that I had* for 50 cents a hundred more than I could get for it.

(Emphasis supplied.) This testimony establishes that the contract Henry now seeks to enforce was one for the sale of car skeletons or other scrap. Nor is there any evidence that the parties considered the costs of any services to be provided by Blankenship pursuant to his promise to buy. Thus, the agreement to sell car skeletons was one for the sale of goods to which the UCC applies.[10]

2. The next question is whether the oral contract to purchase and sell car skeletons runs afoul of the UCC Statute of Frauds. OCGA § 11-2-201 provides in relevant part:

> (1) Except as otherwise provided in this Code section a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but *the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing. . . .*

> (3) A contract which does not satisfy the requirements of subsection (1) of this Code section but which is valid in other

---

[9] (Footnote omitted.) *Heart of Texas Dodge v. Star Coach, LLC*, 255 Ga. App. 801, 802 (1) (567 SE2d 61) (2002).

[10] See *D. N. Garner Co. v. Ga. Palm Beach Aluminum Window Corp.*, 233 Ga. App. 252, 255-256 (1) (504 SE2d 70) (1998) (even though substantial services were involved in installing windows, "the predominant character of the transaction was the sale of goods, and the provisions of the UCC apply").

*respects is enforceable: . . . (b) [i]f the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted.*

(Emphasis supplied.) Here, the parties failed to memorialize their agreement concerning the car skeletons in writing. Thus, that agreement is enforceable only if Blankenship has admitted both that a contract was made and that the contract specified a quantity of goods.[11] Despite their other differences, the parties' accounts on this point are virtually identical: just as Henry testified that he could sell "as many of the car skeletons generated by the Henry junkyard" as he wished, Blankenship testified that he agreed to purchase as many car skeletons "on site at [Henry's] site" as Henry was willing to sell. In the latter testimony, Blankenship admitted the existence of an "output" contract for the purchase and sale of as many car skeletons as Henry wished to provide from the junkyard. As such, the contract specified a quantity of goods, and was enforceable under OCGA § 11-2-201.[12] The trial court therefore erred when it granted summary judgment to Blankenship on this ground.

3. The only remaining question is whether the agreement to purchase car skeletons is barred by the UCC statute of limitation. OCGA § 11-2-725 provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."[13] The statute also specifies that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."[14]

The trial court held that Blankenship breached the oral contract when he failed to construct a car processing plant within 15 months of the contract's formation. It is undisputed, however, that Henry did not tender any car skeletons before Blankenship filed his action for specific performance.

> An absolute refusal by one party to perform an executory contract containing mutual obligations, prior to the date or dates fixed for performance, if such repudiation goes to the

---

[11] OCGA § 11-2-201 (3) (b).
[12] See *Harris v. Hine*, 232 Ga. 183, 186 (1) (205 SE2d 847) (1974) (contract for sale of all cotton produced on 825 acres was an output contract enforceable under OCGA § 11-2-201 (1)).
[13] OCGA § 11-2-725 (1).
[14] OCGA § 11-2-725 (2).

whole contract, amounts to a tender of a breach of the contract; and if accepted as such by the opposite party to the contract, it constitutes an anticipatory breach, and the injured party may at his election at once sue and recover his entire damages.[15]

Regardless of the existence or legality of a processing plant on the property, Henry never tendered any car skeletons to Blankenship — the predicate to any breach of this output contract, which, as Blankenship himself argues, is predominantly one for the purchase and sale of goods.[16] Instead, Blankenship himself repudiated the contract when he filed his action for specific performance, including a demand that Henry remove car skeletons from the property.[17] It follows that Henry's counterclaim, filed shortly after Blankenship's action, is not barred by the UCC statute of limitation. The trial court thus erred when it granted Blankenship summary judgment on Henry's counterclaim for breach of contract.

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 7, 2007 —
RECONSIDERATION DENIED MARCH 28, 2007.

*Vaughn, Wright & Boyer, Frederick L. Wright II*, for appellant.
*Bray & Johnson, H. Michael Bray*, for appellee.

---

[15] (Citations and punctuation omitted.) *Jinright v. Russell*, 123 Ga. App. 706, 709 (2) (182 SE2d 328) (1971).

[16] See OCGA § 11-2-507 (1) ("Tender of delivery is a condition to the buyer's duty to accept the goods and, unless otherwise agreed, to his duty to pay for them").

[17] See *Jinright*, supra (existence of an uncertain contingency does not render rights under the contract unenforceable if the contract was repudiated).