A07A2060. JONES v. THE BARAN COMPANY, LLC.
(660 SE2d 420)

BERNES, Judge.

Appellant Clifton S. Jones filed this breach of contract action under Georgia's Uniform Commercial Code — Sales (OCGA § 11-2-101 et seq.) and sought compensatory damages and attorney fees against appellee, The Baran Company, LLC d/b/a Mercedes-Benz of Buckhead ("the Dealer"). Jones alleged that the Dealer breached its agreement to sell a vehicle to him for the manufacturer's suggested retail price. The Dealer and Jones filed cross-motions for summary judgment. The trial court entered an order granting the Dealer's motion and denying Jones's motion. Jones now appeals from that order. For the reasons set forth below, we reverse.

"On appeal from the grant of summary judgment, this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and punctuation omitted.) *Henry v. Blankenship*, 275 Ga. App. 658 (621 SE2d 601) (2005).

So viewed, the evidence shows that in June 2003, Jones sought to purchase a Mercedes-Benz McLaren SLR, an exotic race car that was hand built and manufactured in an extremely limited quantity (the "Vehicle"). Jones planned to purchase the Vehicle and resell it for a profit. As such, Jones wanted to purchase the Vehicle at a price equal to the manufacturer's suggested retail price ("MSRP") rather than at fair market value as independently determined by a dealership.

Jones and his wife contacted the Dealer and spoke to a salesperson regarding ordering and purchasing the Vehicle at the MSRP. The Dealer had recently opened for business, operations were chaotic, and no one was able to quote a specific price for the Vehicle. However, the

salesperson told Jones that, in return for a $50,000 deposit, he would be entitled to purchase the Vehicle at the MSRP once it was manufactured and delivered to the Dealer. The salesperson further informed Jones that the Dealer's general manager had approved the sale at MSRP. According to the salesperson, the MSRP would "probably [be] somewhere in the mid-[$400,000] range," but no actual price had been determined at that time. At the salesperson's request, Jones signed a preprinted form entitled "Additional Terms and Conditions of Order Agreement for a Mercedes-Benz SLR McLaren Coupe Vehicle." Jones subsequently sent his $50,000 deposit to the Dealer, which retained the funds for over one-and-a-half years pending the manufacture and delivery of the Vehicle.

The Vehicle was delivered from the factory to the Dealer in December 2004 with an MSRP established as $465,650. By that time, the original salesperson was no longer employed by the Dealer, and her pending sales transactions had been taken over by another salesperson. The new salesperson had no knowledge of the prior price agreement reached with Jones and was instructed to quote Jones a final sales price of fair market value. As such, the new salesperson quoted Jones a final sales price of $800,000, the alleged fair market value of the Vehicle. Jones disputed the quoted final sales price and refused to pay any amount above the MSRP. The Dealer's counsel later wrote a letter to Jones offering a sales price of $700,000. Jones rejected the offer, and his deposit was returned to him by the Dealer. The Dealer later sold the Vehicle to another customer for $505,000.

Jones filed the instant lawsuit for breach of contract seeking damages and attorney fees against the Dealer based upon the failed transaction. Jones alleged that the Dealer had entered into a contract to sell him the Vehicle at a price equal to the MSRP. According to Jones, the contract consisted of his oral agreement with the Dealer's salesperson and the "Additional Terms & Conditions" form signed by Jones. In contrast, the Dealer alleged that the contract between the parties consisted of a written "Purchase Agreement" as well as the "Additional Terms & Conditions" form, which the Dealer contended together reflected that no contract had been formed to sell the Vehicle to Jones at the MSRP.

1. Jones contends that the trial court erred in denying him summary judgment and granting summary judgment to the Dealer on his breach of contract claim. We agree that the trial court should have granted summary judgment to Jones on the issue of whether the Dealer was liable for breach of contract.

"A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." OCGA § 11-2-204 (1). See *D. N. Garner Co. v. Ga. Palm Beach Aluminum Window Corp.*,

233 Ga. App. 252, 256 (2) (504 SE2d 70) (1998). Furthermore, "[e]ven though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." OCGA § 11-2-204 (3). See *Unique Designs v. Pittard Machinery Co.*, 200 Ga. App. 647, 653 (3) (409 SE2d 241) (1991) (holding that "[t]he confusion over the purchase price and the open terms in the agreement were not sufficient to negate the clear intent of the parties to enter into an enforceable agreement"). Hence, if otherwise sufficient, the contract need not reflect an agreement on a specific price term. *Jackson v. Meadows*, 153 Ga. App. 1, 2 (2) (264 SE2d 503) (1980).

Here, Jones presented testimony that there was an oral agreement under which the Dealer was to sell Jones the Vehicle at the MSRP in return for Jones making a $50,000 deposit and agreeing to purchase the Vehicle once it was manufactured and delivered to the Dealer, and that the terms of the oral agreement were supplemented by the "Additional Terms & Conditions of Order" form signed by Jones. Jones testified to this effect in his deposition, and the Dealer's salesperson confirmed that she had promised Jones that he would be entitled to purchase the Vehicle at the MSRP in return for his deposit and that the general manager had approved the agreement.

The Dealer failed to present any direct evidence that contradicted the positive testimony of Jones and its salesperson. It is true that the Dealer's representative deposed under OCGA § 9-11-30 (b) (6) testified that had the terms of the oral agreement been as alleged by Jones, "it would have been written on [a] purchase agreement and signed by management, and it would have had an extraordinary amount. It would have been disclosed." This testimony served as circumstantial evidence from which an inference could be made that the price term was not that alleged by Jones in light of the failure to follow normal sales procedure and expressly write the MSRP as the price term in the purchase agreement. Nevertheless,

> [i]t is a well established principle that in ruling on a motion for summary judgment, a finding of fact that may be inferred from, but is not demanded by, circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists, provided that the circumstantial evidence may be construed consistently with the direct evidence.

(Citation and punctuation omitted.) *Copeland v. Houston County Hosp. Auth.*, 215 Ga. App. 207, 208 (450 SE2d 235) (1994). Here, the circumstantial evidence of the Dealer's sales procedure merely permits, but does not *demand*, the inference that the MSRP was not the

agreed-upon price. The circumstantial evidence can be construed consistently with Jones's direct evidence that the MSRP was the agreed-upon purchase price in accordance with the oral agreement even though the Dealer's representative and/or management did not follow normal sales procedures. As such, the Dealer's circumstantial evidence has no probative value against Jones's existing direct evidence that the MSRP was the agreed-upon price. We therefore conclude that the uncontroverted evidence shows that an oral contract had been formed for the sale of the Vehicle, with the price term being the MSRP ultimately arrived at by the manufacturer. See *Jackson*, 153 Ga. App. at 2-3 (2), (3).

The Dealer, however, argues that the oral agreement should not be considered because it is impermissible parol evidence that is inconsistent with the express terms of a written "Purchase Agreement" and the "Additional Terms & Conditions" form. We are unpersuaded. With respect to the Purchase Agreement, the copy of that document found in the record contains a blank signature line for the buyer, and thus does not contain Jones's signature. Additionally, Jones testified that he had never seen or received the Purchase Agreement. Finally, the Dealer's salesperson who testified that she had entered into an oral agreement with Jones further testified that she did not know whether a copy of the Purchase Agreement had ever been sent to Jones or whether he had ever signed it. The Dealer presented no evidence that contradicted this testimony and documentary evidence. As the party relying upon the Purchase Agreement, the burden was on the Dealer to prove that it was part of the parties' contract. *Shilling v. Cornerstone Med. Assoc.*, 290 Ga. App. 169 (659 SE2d 416) (2008). Accordingly, the Dealer failed as a matter of law to prove that the Purchase Agreement was part of the parties' contract, and therefore cannot rely upon its terms.

With respect to the "Terms and Conditions" form, the Dealer focuses on Paragraph 4, which provides:

I understand and agree that this Order is being placed by me without the current availability of final pricing information and based upon preliminary product information and specifications which are subject to change and finalization at the Vehicle manufacturer's and MBUSA's sole discretion. Once suggested retail pricing and vehicle features are finalized, I understand that I will be informed in writing by MBUSA and/or Dealer of final suggested retail pricing, vehicle features, and options. I further understand that final pricing and vehicle specifications may not be finalized until after I

have been notified by MBUSA and/or Dealer that production of the vehicle has started.[1]

The Dealer contends that the oral agreement should not be considered because it is inconsistent with this paragraph, the language of which the Dealer argues unambiguously states that the Dealer would set the final price of the Vehicle based on fair market value. Again, we disagree.

> A party is entitled to prove the existence of any separate oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transactions between them.

(Citation and punctuation omitted.) *Henry*, 275 Ga. App. at 659 (1) (a). Here, the "Additional Terms and Conditions" form does not contain a merger clause or other provision reflecting that it was intended to be the entire agreement between the parties. See id. at 659-660 (1) (a). And, by its plain and unambiguous language, Paragraph 4 simply states that the final price for the Vehicle had not yet been determined, and that the MSRP for the Vehicle would be provided in writing to the buyer, Jones, once the manufacturer arrived at that price. Notably, Paragraph 4 is silent as to *how* the final price would be determined, a matter instead addressed by the oral agreement between the parties. Hence, contrary to the Dealer's assertion, Paragraph 4 is not inconsistent with the alleged oral agreement under which Jones would be entitled to purchase the Vehicle at the MSRP — a price that all parties agreed had not yet been determined by the manufacturer at the time the agreement was reached. Accordingly, Jones was entitled to rely upon the oral agreement as a basis for his contract claim. See id.

Since evidence shows the existence of the oral agreement, the next issue is whether the agreement is enforceable. In this respect, the Dealer argues that Jones's version of the contract is unenforceable because it violates the Statute of Frauds. It is true that

> a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless

---

[1] "MBUSA" under Paragraph 4 does not refer to the Dealer; rather, it refers to Mercedes-Benz USA, LLC, the American franchisor for the Mercedes-Benz brand and the manufacturer of the Vehicle.

> there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

OCGA § 11-2-201 (1). Notwithstanding the writing and signature requirements of the Statute of Frauds, however, a contract for the sale of goods is still enforceable "[i]f the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract for sale was made." OCGA § 11-2-201 (3) (b). See *Henry v. Blankenship*, 284 Ga. App. 578, 581 (2) (644 SE2d 419) (2007); *Jackson*, 153 Ga. App. at 2-3 (3); *Giant Peanut Co. v. Carolina Chemicals*, 129 Ga. App. 718, 720 (2) (200 SE2d 918) (1973). It is sufficient that the party "admit[ ] both that a contract was made and that the contract specified a quantity of goods." *Henry*, 284 Ga. App. at 581 (2).

In the present case, the Dealer's answer to the complaint admitted that the Dealer had entered into a contract with Jones. The Dealer did not otherwise dispute the existence of a contract, and in fact, retained Jones's deposit for the Vehicle. Furthermore, the Dealer's representative deposed under OCGA § 9-11-30 (b) (6) testified that there was a contract between the parties. The Dealer disagreed, however, as to the *terms* of the contract of sale. Contrary to the terms asserted by Jones, the Dealer asserted that the parties had entered into a contract under which Jones had an option to purchase the Vehicle once it was manufactured and delivered to the Dealer, with the price set at the fair market value arrived at by the Dealer.[2] Under these circumstances, where the Dealer admitted that a contract existed for the sale of a specific quantity of goods (namely, one Vehicle) but on different terms and conditions than those alleged by Jones, the oral agreement between Jones and the Dealer was enforceable under the exception to the Statute of Frauds set forth in OCGA § 11-2-201 (3) (b). See *Henry*, 284 Ga. App. at 581 (2); *Jackson*, 153 Ga. App. at 2-3 (3); *Giant Peanut Co.*, 129 Ga. App. at 720 (2).

Accordingly, in light of the evidence Jones presented of an enforceable oral agreement under which he was entitled to purchase the Vehicle from the Dealer at the MSRP, we conclude that the trial

---

[2] We note that an option contract for the purchase of goods is a contract for the sale of goods under the Uniform Commercial Code. See, e.g., *Merritt-Campbell, Inc. v. RxP Products*, 164 F3d 957 (5th Cir. 1999); *Honeywell v. Minolta Camera Co.*, No. Civ. A. 87-4847, 1991 WL 841033, at *5 (D. N.J. July 19, 2001); *McCollum Aviation v. CIM Assoc.*, 446 FSupp. 511, 513 (S.D. Fla. 1978). See also Richard A. Lord, 9 Williston on Contracts § 26:4 (4th ed.1999) ("A conditional sale or contract to sell on condition is covered by the Statute [of Frauds]."); 2 Lary Lawrence, Anderson on the Uniform Commercial Code § 2-106:12 (3d ed. 2004) ("An option contract for the sale of goods is governed by Article 2 [of the UCC].").

court erred in granting summary judgment to the Dealer on the breach of contract claim. Furthermore, the trial court should have granted summary judgment to Jones on the issue of liability, since the Dealer failed to present evidence sufficient to contradict the direct evidence brought forward by Jones as to the existence and terms of the contract between the parties.

2. We reach a different result with respect to the issue of contract damages. Specifically, we conclude that there was a genuine issue of material fact over the amount of damages that should be awarded to Jones, precluding summary judgment in favor of either party on that limited issue.

OCGA § 11-2-713 (1) provides that

> the measure of damages for nondelivery . . . is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this article . . . , but less expenses saved in consequence of the seller's breach.

In support of his claim for damages, Jones sought the amount of $234,350, representing the difference between the Dealer's final sales price quote ($700,000) and the MSRP ($465,650).

Notwithstanding Jones's claim for damages, the evidence presents a dispute as to the market price of the Vehicle at the time of the breach. Jones contends that the Dealer's quoted $700,000 price was the market price. In contrast, the Dealer contends that the market price was $505,000, which was the sales price that it obtained from a different buyer. Additionally, the Dealer's owner gave conflicting deposition testimony regarding the value of the Vehicle. Although he testified that he had no knowledge of the market value of the Vehicle in December 2004 when the alleged breach occurred, he further testified that he was aware of other sales in the amount of $750,000 for the Vehicle and suggested that the market value in late 2004 could have been $700,000. In light of the conflicting evidence, a question of fact remained as to the market price for the Vehicle at the time of the breach. The trial court therefore erred in granting summary judgment to the Dealer on the issue of contract damages, which must be resolved at trial.

*Judgment reversed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED MARCH 26, 2008 — 

*Slaughter & Virgin, Frank W. Virgin*, for appellant.

*Schulten, Ward & Turner, David L. Turner, Dean R. Fuchs*, for appellee.